[Crim. No. 3628. Second Dist., Div. One. Sept. 14, 1942.]

THE PEOPLE, Respondent, v. VICTOR NOEL ALEXANDER, Appellant.

Gladys Towles Root for Appellant.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

WHITE, J.—In an information filed by the District Attorney of Los Angeles County, defendant was charged in count one with the crime of grand theft of an automobile, while in count two he was accused of a violation of section 503 of the Vehicle Code, which makes it an offense to take an automobile without the consent of the owner thereof. Following entry of not guilty pleas to both offenses charged,

a jury was waived and trial had before the court, resulting in the conviction of defendant on count one and his acquittal of the offense charged in count two. While defendant in his statement of grounds of appeal and demand for phonographic transcript states that the appeal is taken from the judgment and the order denying his motion for a new trial, the record does not disclose that any motion for a new trial was made, and the appeal therefore must be considered as having been taken only from the judgment.

Stating the facts in the light most favorable to the prosecution, as we are required to do following conviction of the defendant, we find in the record evidence that about noon on Saturday, January 24, 1942, defendant drove into the used car lot of William Henry at Hermosa Beach in the county of Los Angeles. Defendant was driving a Studebaker automobile, and wanted to work out a deal whereby he would transfer the Studebaker to the dealer and purchase a 1941 Buick coupé. He stated that he desired to take delivery of the Buick that same Saturday afternoon, so that he could drive back to San Francisco to be at work the following Monday morning. During the negotiations defendant stated to Mr. Henry, the dealer, that he had purchased the Studebaker as a new car in San Francisco, but did not have the white registration slip on it because that document was in transit to Sacramento in connection with his application for 1942 number plates. In response to a question asked of him by Mr. Henry as to whether he ever had a loan on the Studebaker, defendant stated that at one time he had a loan with the Universal Finance Company in Los Angeles; that at that time the car was registered to an address on 92nd Street, but that the loan had been paid off in full. In an attempt to verify the aforesaid statement, Mr. Henry called the Universal Finance Company on the telephone, but that Saturday afternoon its office was closed.

The dealer then contacted the Hermosa Beach Police Department and learned through them that the Universal Finance Company was the legal owner of the Studebaker automobile and that appellant had made the loan from an address in 92nd Street in Los Angeles. When he was asked to produce the "pink slip" on the Studebaker, defendant replied that it was in San Francisco, but that he could send it down on Monday. The dealer then agreed to take what is called a "buyer's bill of sale" on the Studebaker and to

deliver the Buick to the defendant at once after the necessary conditional sales contract was completed in connection with the sale of the Buick. In the conditional sales contract signed by defendant he gave his address at 203 Sutter Street, San Francisco, where he stated that he had lived for about three years, upon property that he owned, and that he was engaged in the business of a roofing contractor in San Francisco.

From the evidence, it appears that defendant first came to the used car lot to look at the Buick a few days prior to the transaction above referred to, to wit, on Wednesday or Thursday of that same week. Upon his return to the lot on Saturday noon, he said to one of Mr. Henry's salesmen on the lot, "I see you still have my Buick," to which the salesman replied, "I am glad to have you come back; I think I have." The salesman then appraised defendant's Studebaker and figured the amount of the contract; the papers in connection with the transaction were completed and signed by defendant with Mr. Henry, the dealer. The salesman testified that in the conversation that occurred among himself, Mr. Henry and defendant, the dealer agreed to deliver the Buick to defendant and take a buyer's bill of sale for the Studebaker, and wait until Monday morning for the certificate of ownership on the latter automobile. The Buick was delivered to the defendant, and he drove it away.

On the following Monday morning the dealer continued his investigation, and as a result of that investigation he was required to deliver the Studebaker automobile to the Universal Finance Company. The testimony shows that on the Saturday in question, when defendant delivered the Studebaker to Mr. Henry, there was due and unpaid a balance of $630 from defendant to the finance company, and his conditional sales contract for the purchase of the Studebaker was in default for three installments of $35 each for the months of November, December and January.

It also appears in the evidence that when a copy of the conditional sales contract on the Studebaker was compared with the original, the number of cylinders had been changed from six to eight, the serial number had been changed, and the words, "used 39 Stude" had been changed to "1941 Buick." Defendant was apprehended in Kansas City, Missouri, and the police officer who returned him to Los An-

geles for trial testified that among the personal effects of the defendant at the time of his arrest was a copy of the conditional sales contract on the Studebaker. The officer had a discussion with defendant regarding the erasures and changes that had been made on that form of conditional sales contract. The defendant denied any knowledge of the erasures or changes. He admitted to the officer that at the time he delivered the Studebaker to Mr. Henry and received the Buick he was aware of the fact that he owed a balance on the purchase price of the Studebaker. He further stated that after he had taken the Buick automobile on the afternoon of January 24, he had an accident in Wilmington that night; that after a short interval in California he drove to El Paso, Texas, and had the car painted black and maroon. Defendant also stated that the license plates on the Buick had been stolen; that he found some 1942 Arkansas license plates in a wrecking yard and attached them to the Buick.

Testifying as a witness in his own defense, defendant denied any knowledge of much of the information that appeared on the conditional sales contract and other papers in connection with the transaction involving the Buick, claiming that this information was placed therein after he had signed the document. He admitted in his testimony that he told the dealer's salesman that he had lived in San Francisco at one time, and further admitted that he did give the address of 203 Sutter Street. He denied that he ever made any statement to Mr. Henry or the latter's salesman that he was the owner of the Studebaker or that he had paid off the loan thereon.

■ Contrary to appellant's claims, the information sufficiently charged the offense of grand theft. Compliance with subdivision 2 of section 950 of the Penal Code does not require that the information state the kind of grand theft with which the defendant is charged. The elimination of the necessity for the district attorney to elect in advance of the proof whether the prosecution will proceed upon the theory of larceny, false pretenses, trick and device, embezzlement, etc., and the reasons for such elimination, are set forth in *People* v. *Fewkes,* 214 Cal. 142, 149 [4 P. (2d) 538].

■ Appellant next contends that the decision of the court adjudging him guilty of grand theft is contrary to law and the evidence; but in reading the arguments advanced in

appellant's behalf we fail to find any clear or direct specification of any particular wherein the evidence fails to sustain the court's decision; but a perusal of the testimony persuades us that the decision of the court is fully supported by evidence and sustained by the law. Included in the crime of grand theft is the act of depriving another of his property by means of fraudulent representations. (Pen. Code, § 484.) Appellant knowingly and falsely represented to the dealer, Mr. Henry, that he was the owner of the Studebaker automobile; that he was in possession of the "pink slip" thereto; that while at one time he had obtained a loan on the automobile, such obligation had been liquidated and discharged. He further falsely represented that he was living and working in San Francisco and owned property in the latter city. Furthermore, appellant signed a bill of sale to the Studebaker car which he knew he did not own, and upon which vehicle he owed some $630 and was in default of three monthly payments. When there is added to the foregoing the conduct of appellant in removing the Buick automobile from the State of California, altering the same and substituting Arkansas license plates thereon, we can see no escape from the conclusion that appellant gained possession of the Buick automobile by means of false and fraudulent representations concerning his ownership of the Studebaker; that he never had any intention of delivering a clear title to the last named vehicle—in fact, could not—and consequently he was guilty of larceny.

Appellant's contention that Mr. Henry, the dealer, was informed at the time of the transaction that appellant was not the legal owner of the Studebaker automobile and therefore could not have relied to his detriment upon any representations appellant made, is not borne out by the record. True, the dealer was advised through the police department that a finance company was the legal owner of the Studebaker according to the records of the Motor Vehicle Department; but the dealer testified that in about ninety per cent of the transactions involving financing of automobile purchases the legal title is not transferred upon the records of the Motor Vehicle Department when the conditional sales contract is paid out; that "the finance company signs off on the back of the pink slip and mails it to the customer without it being transferred, and it is up to the customer to put it through Sacramento. It costs them $1.00 for a transfer,

to get the finance company's name off, and nine out of ten people put it in their pocket or their safe deposit box, with the owner of record showing the finance company still as the owner of record." Further, in answer to a question, "And therefore you found out through Mr. Murray of the Hermosa Beach Police Department that this car was still owned, as far as the bare legal title was concerned, by the finance company, and you were not alarmed by that?" the same witness answered, "I wasn't, for the simple reason that when I talked to Mr. Alexander he told me the exact address of where the car was registered, according to the records, which I believe was on 92nd Street. I asked him about that particular address and he said that was the address of his wife's folks and it was registered there for convenience only." When, therefore, a check of the records indicated that a loan had been made on the Studebaker car and that it was registered at the address on 92nd Street as claimed by appellant, the dealer believed and relied upon the false representation made by appellant that the loan made on the automobile by the finance company had been fully paid. The evidence received at the trial of this cause, showing as it does a course of conduct on the part of appellant teeming with fraud and replete with intrigue, deception and duplicity, was amply sufficient to warrant the trial court in finding appellant guilty of the charge of grand theft.

The judgment is affirmed.

York, P. J., and Doran, J., concurred.